# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:08-CV-00150-R

**GARY VANDER BOEGH**                                                      **PLAINTIFF**

**v.**

**UNITED STATES OF AMERICA**                                               **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's Motion to Amend and Reconsider (DN 63). Defendant has responded (DN 66) and Plaintiff has replied (DN 69). This motion is now ripe for adjudication. For the reasons that follow, Plaintiff's motion is DENIED.

Also before the Court is Defendant's Motion for Costs (DN 64). Plaintiff has responded (DN 65) and Defendant has replied (DN 68). This motion is now ripe for adjudication. For the reasons that follow, Defendant's motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

Plaintiff Gary Vander Boegh brought this action under the Federal Tort Claims Act ("FTCA"). On September 26, 2007, while attending a public meeting held by the Department of Energy at a hotel in Paducah, Kentucky, Vander Boegh claimed that government-employee Doug Frost injured him. Specifically, Vander Boegh alleged that Frost slammed a door on him while entering a conference room, which damaged his artificial hip and eventually required him to have hip reconstructive surgery. Vander Boegh originally brought suit for negligence against Frost, however pursuant to the FTCA, the United States of America ("Government") was later substituted as the proper party. DN 18. A thorough description of the factual and procedural background for this matter may be found in the Court's previous rulings. DN 46; DN 61.

On November 10, 2010, a bench trial was held regarding this matter in Paducah,

Kentucky. Vander Boegh and Frost offered the only direct testimony about the events on September 27, 2007. This Court rendered its judgment on December 29, 2010. DN 61. In it, the Court made the following findings of fact: (1) while Vander Boegh was struck by the door, he occupied such a position that he could not see the action transpiring behind him; (2) Frost was standing in the door's path as it opened and had he not reacted quickly, the door would have hit him; and (3) Frost did not push back on the door as it swung toward him; he merely stopped its progress to protect himself. These findings led the Court to conclude that Frost had not behaved negligently and had only acted to protect himself from bodily harm. Consequently, the Court entered judgment for the Defendant. DN 62.

## ANALYSIS

### I. Motion to Amend and Reconsider

Vander Boegh now moves for the Court to amend and reconsider its earlier factual and legal findings under Federal Rule of Civil Procedure 52 and enter judgment for him under Federal Rule of Civil Procedure 59. As the basis for these requests, Vander Boegh states that the Court did not properly consider a "pushing motion" that Frost made during his testimony in describing how he stopped the door from striking him. Vander Boegh also claims that the Court failed to focus on certain portions of his own unambiguous testimony and the statements of the physicians at trial, both of which indicated Frost's negligence. The Government resists this motion, saying the Court's earlier findings were correct and are not impacted by this new evidence.

A court may grant a motion to alter or amend pursuant to Federal Rule of Civil Procedure 59(e) "if there is a clear error of law, newly discovered evidence, an intervening change in

controlling law or to prevent manifest injustice." *GenCorp v. Am. Int'l*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). "[C]ourts typically will consider additional evidence accompanying a Rule 59(e) motion only when it has been newly discovered, and that to [c]onstitute 'newly discovered evidence,' the evidence must have been previously unavailable." *Id*. A Rule 59(e) motion however does not provide plaintiffs another opportunity to argue the merits of their case. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). The motion must also be filed no later than 28 days after the entry of the judgment. Fed. R. Civ. P. 59(e).

The Court rejects this motion first since, in making the prior factual and legal determinations, it was aware of Frost's gesture during his testimony. That it was not discussed in the previously published judgment was not an oversight, but instead an indication that the Court did not consider Frost's pushing motion as "forceful," a characterization that Vander Boegh and his wife have made in affidavits attached to this motion. DN 63-2; DN 63-3. The Court believed then, as it does now, that Frost's demonstration was congruent with its other factual findings: that he did not push the door shut upon Vander Boegh and that his reaction was reasonable under the circumstances. Even assuming that one could draw conclusions from Frost's movement during his testimony, the Court would still choose to focus on what he said rather than construe the underlying meaning of his gestures. Frost consistently stated that he merely stopped the door's progress to protect himself and this is the version of the events that the Court has chosen to accept.

Moreover, the Court did not ignore the testimony at trial that supported Vander Boegh's allegations of negligence. Instead, it simply found that when considering the evidence as a

3

whole, Vander Boegh failed to carry his burden of proof. The evidence highlighted in this motion by Vander Boegh was given due consideration by the Court in reaching its earlier decision and, once again, it does not show by a preponderance of the evidence that the end result of September 26, 2007, was caused by negligence.

Accordingly, Plaintiff's Motion to Amend and Reconsider is DENIED.

## **II. Motion for Costs**

Defendant has also made a Motion for Costs. In its motion, it requests reimbursement for the following items: (1) the expenses for Frost's travel from Arlington, Virginia, to Paducah, Kentucky, totaling $1,058.26, (2) costs incurred deposing a number of witnesses, totaling $1,634.08, and (3) the fee for the trial transcript, totaling $361.73. Vander Boegh opposes the entirety of these costs, save the Government's expenditure of $920.70 for his own deposition.

Federal Rule of Civil Procedure 54(d) provides that a prevailing party is generally allowed to recover its costs, other than attorneys' fees. 28 U.S.C. § 1920 specifies what costs may be taxed. Any costs taxed by the Court must be allowed under § 1920, and must be reasonable and necessary in amount. *See BDT Prods, Inc. v. Lenmark Intern., Inc.*, 405 F.3d 415, 417 (6th Cir. 2005). The party objecting to the taxation bears the burden of persuading the Court that taxation is improper. *Id*. at 420.

### a. Frost's travel expenses

The overall sum for Frost's travel costs, $1,058.26, breaks down as follows:

(1) $120.00 for witness fees for three days,

(2) $292.20 for car rental,

(3) $25.38 for taxi,

4

(4) $50.00 for checked bags,

(5) $92.00 for meal expenses,

(6) $313.90 for airfare,

(7) $164.78 for hotel expenses.

DN 64-1 at 2.

Vander Boegh objects to the entirety of these fees, arguing that Frost should be treated as a party in this litigation, and therefore incapable of recouping expenses related to his travel. *See Hodge v. Seiler*, 558 F.2d 284, 287 (5th Cir. 1977) ("[T]he expenses of witnesses who are themselves parties normally are not taxable." (quoting Wright & Miller, Federal Practice and Procedure: Civil § 2678 p. 229)). He states that because Frost was the original defendant in this matter and was only relieved of this position by the FTCA, the Court should treat him as a party in the action. Vander Boegh does not cite any legal precedent where another court has adopted this rationale.

The Court rejects Vander Boegh's argument primarily because it is without a basis in law. While he is able to draw several analogies between Frost's actions in this matter and the role a party to litigation may play, the Court will not shield itself from the obvious: when this matter went to trial, Frost was employed by the Government as a witness. While Frost was indeed the original party against whom the action was brought, this was only by virtue of Vander Boegh's initial error, which was later corrected when the original complaint was amended, subsituting the Government for Frost. Since, he appeared in Paducah not as a party but instead as a Government witness, his travel costs may be taxed to Vander Boegh.

Even in addressing Vander Boegh's witness-as-a-party analogy, the Court sees more

5

convincing similarities between Frost's appearance at trial and the trial testimony of corporate directors and officers. In lawsuits against corporate entities, courts have awarded costs for "expenses of a director or officer of a corporation who is not personally involved in the litigation . . . even if that individual is testifying on behalf of the organization and the latter is a party to the suit." Wright & Miller, Federal Practice and Procedure: Civil § 2678 p. 229. The limit of this rule is whether the director or officer is an "identifiable party in interests"; if so, then expenses for that witness are not recoverable. *Electronic Specialty Co. v. International Controls Corp.*, 47 F.R.D. 158, 162 (S.D.N.Y. 1969). Relying upon this wrinkle in Rule 54(d) jurisprudence, the Court finds that Frost's position with the Department of Energy is sufficiently analogous to a director or officer in a corporate entity. As he is not a party in interest, his witness expenses are recoverable. Ultimately though, the Court is most persuaded by the simple truth that Frost appeared before it as a witness, and therefore he will be treated as such.

Alternatively, Vander Boegh argues that Frost's travel expenses are limited by the "100-mile rule," which has been relied upon in the past to deny costs for witnesses traveling in excess of 100 miles. *See Mount Vernon Co. v. Rowe Transfer & Storage Co.*, 36 F.R.D. 263, 264 (E.D. Tenn. 1962). This rule however has been generally rejected, with trial courts bestowed instead with wide discretion in awarding travel costs for witnesses under Rule 54(d). *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 232 (1964) overruled on other grounds *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442-43 (1987); *West Wind Africa Line, Ltd. v. Corpus Christi Marine Servs. Co.*, 834 F.2d 1232, 1237 (5th Cir. 1988). The more relevant inquiry for the Court in determining whether to award costs for a witness's travel expenditures is the importance of their testimony to the overall action. *See Marmo v. Tyson Fresh Meats, Inc.*,

457 F.3d 748, 763 (8th Cir. 2006) ("A district court may award witness fees if it determines that the witness's testimony 'was crucial to the issues decided and the expenditures were necessary to the litigation.'" (quoting *Neb. Pub. Power Dist. v. Austin Power, Inc.*, 773 F.2d 960, 975 (8th Cir. 1985))); *see also O'Donnell v. Ga. Osteopathic Hosp., Inc.*, 99 F.R.D. 578, 580 (N.D. Ga. 1983); *Hardy v. Milican*, 58 F.R.D. 448, 448 (N.D. Miss. 1973). In the current matter, it would be an understatement to say that Frost was an important witness. He was the only witness with direct knowledge of the events of September 26 and provided testimony that squarely controverted Vander Boegh's allegations of negligence. Accordingly, the Court relied on his testimony in reaching its decision. As Frost's testimony was crucial to this matter and because the offered costs are reasonable and adequately documented, the Court grants the Government's request in full.

### b. Deposition Costs

Concerning the costs incurred gathering the necessary depositions, $1,634.08, the detailed list of Defendant's expenses is as follows:

(1) $920.70 for the transcription costs in Vander Boegh's deposition,

(2) $180.00 for the court reporter's appointment fee in Vander Boegh's deposition,

(3) $329.55 for transcripts of the medical depositions,

(4) $203.83 in travel costs relating to the medical depositions.

DN 64-1.

While Vander Boegh does not contest the transcription costs, he does object to the court reporter's appointment fee since it is not explicitly set forth in § 1920. However, the Government is correct in noting that the costs of depositions, including the expense of a court

7

reporter, may be recovered under this statutory provision.  The Sixth Circuit has unambiguously approved the taxing of this cost to the non-prevailing litigant as "the court reporter's appearance fee is necessary to take a deposition." *Arrambide v. Wal-Mart Stores, Inc.*, 33 F. App'x. 199, 203 (6th Cir. 2002).  Vander Boegh's argument on this point is both incorrect and unpersuasive.  The Court believes that the appointment fee was necessary and reasonable to secure Vander Boegh's deposition.  Consequently this is an appropriate cost to be taxed to him.

Vander Boegh next takes issue with the cost of copying the medical depositions.  Section 1920 allows "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."  28 U.S.C. § 1920(4).  This Court also has a history of reimbursing the prevailing litigant this expenditure where the copies were shown to be reasonably necessary.  *See Roll v. Bowling Green Metal Forming, LLC*, No. 1:09-CV-81, 2010 WL 3069106, at *2 (W.D. Ky. Aug. 4, 2010); *Cunningham v. Target Corp.*, No. 3:06-CV-160, 2010 WL 1032772, at *2 (W.D. Ky. Mar. 17, 2010).  Here, the medical deposition transcripts were essential for the Government to review Vander Boegh's damages and causation claims.  Undermining these portions of his testimony could only have been accomplished by a thorough, pretrial examination of these depositions.  Thus, the Court is incapable of construing these costs as anything but reasonable and necessary.

Finally, while the Government initially requested reimbursement for the travel expenses of counsel for attending depositions, it submitted in its reply to this motion that it is no longer seeking to recoup these costs.  DN 68 at 15-16.  Accordingly, the Court does not consider these expenses in its analysis and denies the Government's original request.

### c. Trial Transcript Costs

Finally, Vander Boegh resists the Government's attempts to recover the trial transcript fee of $361.73. As the basis for this argument, he points to the Court's order at trial for both parties to split the transcription costs for the two witnesses on liability, Frost and himself. Vander Boegh fails to cite any legal precedent stating that the costs of a trial transcript should not be taxed where a court compels the parties to order said transcript.

Section 1920(2) clearly sets out that the expenses of transcripts may be taxed as costs by a court if they were "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Other courts have found, and this Court agrees, that where a court orders the parties to purchase a trial transcript, the transcription cost may be taxed by the court upon the non-prevailing litigant. *See e.g.*, *Prashker v. Beech Aircraft Corp.*, 24 F.R.D. 305, 310-11 (D. Del. 1959); *Firtag v. Gendleman*, 152 F. Supp. 226, 226 (D.C.D.C. 1957). In light of this precedent, as well as his brief and conclusory argument, the Court finds that Vander Boegh has failed to carry his burden in showing that this cost was not reasonable and necessary. Therefore, it is also taxed to him.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion to Amend and Reconsider (DN 63) is DENIED. It is further ORDERED that Defendant's Motion for Costs (DN 64) is GRANTED IN PART AND DENIED IN PART. Plaintiff shall be taxed the sum of $2,850.24.